IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GWEN SIMPKINS, | ) CIVIL ACTION NO. 9:16-1710-TMC-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on June 28, 2010, alleging disability as of February 15, 2009, due to chronic neck and back pain, depression, anxiety, stomach problems, and headaches. (R.pp. 201-205).[2] Plaintiff's applications were denied initially and upon reconsideration, as well as by an Administrative Law Judge (ALJ) after a hearing. (R.pp. 8-22). The Appeals Council denied Plaintiff's request for review, following which Plaintiff filed suit in this

---

[1] On January 23, 2017, Berryhill became the Acting Commissioner of Social Security replacing Carolyn Colvin. The Clerk is directed to change the Defendant to Nancy A. Berryhill, Commissioner of Social Security Administration, on the docket.

[2] Plaintiff had also filed an earlier DIB application in 2005, which was been denied. (R.p. 8).



United States District Court.  Simpkins v. Astrue, C.A. No. 9:13-2769.  The decision of the Commissioner was thereafter reversed and remanded by this Court, following which the Appeals Council vacated the ALJ's decision and sent the case back to a different ALJ for further proceedings. (R.pp. 902-905).  That ALJ then held a second hearing on July 28, 2015, following which she issued a decision on October 7, 2015, again finding that Plaintiff was not disabled and denying Plaintiff's claims.  (R.pp. 794-827, 828-853).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R.pp. 280-283).

Plaintiff then filed this action asserting that there was not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was fifty-one years old when she alleges she became disabled, has a high school education and past relevant work experience as a punch press operator and production manager. (R.pp. 20, 33-34, 57). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in this case, the ALJ determined that,



although Plaintiff did suffer through her last day insured[3] from the "severe" impairments[4] of degenerative disc disease of the cervical and lumbar spine, morbid obesity, right carpal tunnel syndrome (CTS), an affective disorder, an anxiety disorder, and possible borderline intellectual functioning, she nevertheless retained the residual functional capacity (RFC) to perform light work[5], with the following additional limitations: cannot perform any overhead reaching; could not climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; frequently handle and finger with her dominant right hand; follow simple instructions and perform simple, routine tasks; no high production work, defined as no high volume assembly line work; could have public contact 10% of the workday or less, but could do no counter sales or work serving the public; and could occasionally make job related decisions and tolerate work place changes. (R.pp. 799, 803). The ALJ further determined that, although the limitations caused by Plaintiff's impairments precluded her from performing her past relevant work, she could perform other representative occupations with these limitations, such as an inspector (D.O.T. Number 741.687-010) and hand packer (D.O.T. Number 753.687-038), and was therefore not entitled to DIB. (R.p. 819).

Plaintiff asserts that in reaching this decision, the ALJ erred by relying on VE

---

[3] Plaintiff's eligibility for DIB expired on December 31, 2010. (R.pp. 10, 797). Therefore, in order to obtain DIB, Plaintiff must establish that her impairments became disabling by on or before that date. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.101 (2009).

[4] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

4



testimony that was in response to an improper hypothetical, and by rejecting and improperly evaluating the opinion evidence from Plaintiff's treating physician, Dr. Todd Gallman. After careful review and consideration of the record and arguments from the parties, the undersigned is constrained to agree with the Plaintiff that the ALJ's hypothetical to the VE was flawed, and that the decision must therefore be reversed and remanded for further consideration of Plaintiff's claims.

Most of the medical evidence regarding Plaintiff's condition deals with her physical problems, although Dr. Gallman did also note and treat Plaintiff for symptoms of depression. (R.pp. 590, 596, 604-605, 774-776, 1016). See also (R.pp. 1018-1039). On November 3, 2010, Michael J. Grant, PhD[6], opined that Plaintiff suffered from "Depression - severe - NOS", "Anxiety-moderate to severe – NOS", "Psychosocial stressors – health, occupational, financial", and had a current GAF[7] of 65.   Dr. Grant opined that on testing, Plaintiff "tended to struggle with items requiring concentration." (R.p. 675). Dr. Grant also opined that "[s]he had considerable difficulty maintaining attention and concentration for extended periods." (R.p. 675). After review of this medical evidence and consideration of the subjective testimony presented at the hearing, the ALJ found that Plaintiff had severe mental impairments (affective disorder, anxiety disorder, and borderline intellectual functioning) which resulted in, inter alia, moderate difficulties with regard to Plaintiff's ability to maintain concentration, persistence, or pace. (R.pp. 799, 802). However, although the ALJ found

---

[6]Plaintiff was referred to Dr. Grant for evaluation at the Commissioner's request. (R.p. 672).

[7]Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF score of 61 to 70 indicates "some mild symptoms of depression or difficulty in social or occupational settings are present. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000); Simons v. Barnhart, No. 04-5021, 2004 WL 2633448 at * 2 (4th Cir. Nov. 18, 2004).



that Plaintiff had moderate restrictions with respect to concentration, persistence, or pace, she failed to then properly account for this restriction in her RFC determination.

Specifically, the ALJ limited Plaintiff's RFC to (among other limitations) the performance of simple instructions and simple, routine tasks; no high production work, defined as no high volume assembly line work; she could have public contact 10% of the workday or less, but could do no counter sales, or work serving the public; and could occasionally make job related decisions and tolerate work place changes. (R.pp. 799, 803). Restricting a claimant like the Plaintiff to simple, routine work in order to account for mental impairments, to include a moderate restriction with respect to concentration, persistence or pace, was an RFC formula that had generally found support in the case law prior to 2015. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; McDonald v. Astrue, 293 F. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]. However, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).

The Commissioner argues in her brief that the ALJ properly accounted for Plaintiff's mental impairments by "limiting her to simple instructions and simple routine tasks; no high



production work[8]; a public contact 10% of the workday or less, but not counter sales, or work serving the public; occasional job related decisions and occasional work place changes", and further argues that the ALJ was not required to include a limitation addressing Plaintiff's moderate limitation in her ability to maintain concentration, persistence and pace in Plaintiff's RFC. Defendant's Brief, pp. 6-7. See (R.p. 818). In Mascio, however, the Fourth Circuit held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace.[9] Mascio, 780 F.3d 638. Contrary to what the Commissioner argues the ALJ was required to do, the ALJ failed to adequately address this limitation (to "stay on task") in either her RFC finding or in her hypothetical to the VE. (R.pp. 803, 815-816, 818, 848-849, 934-937). Therefore, the ALJ's reliance on the VE's testimony that Plaintiff could perform the jobs identified was error, as the hypothetical did not address this limitation. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) [In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision].

In light of Mascio, it is now the law in this Circuit that the ALJ's limitation of a Plaintiff's RFC to simple or routine tasks does not by itself take into account an inability "to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion

---

[8]The ALJ defined no high production work "as no high volume assembly line work." (R.p. 803).

[9]As referenced above, the ALJ also made additional limitations which are discussed herein. See discussion, infra.



of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).[10] Rather, the ALJ's limitation to simple, routine work primarily addresses the complexity of the work, not Plaintiff's ability to stay on task. See Mascio, 780 F.3d at 638; Salmon v. Colvin, No. 12-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) [noting that "the Fourth Circuit made clear that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work."] (citations and quotations omitted); cf. Straughn v. Colvin, No. 14-200, 2015 WL 4414275, at *4 n.5 (M.D.N.C. July 20, 2015) [reasoning that the ALJ "did not address how the RFC's limitation to 'simple, routine' tasks addressed his finding of 'mild limitations with concentration, persistence or pace.' Thus, the ALJ's decision may also run afoul of the recent decision in Mascio"] (citation and quotation omitted).

---

[10]Listing 12.00 explains, in part:

> Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence.
>
> ****
>
> In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).



Similarly, the ALJ's limitation of Plaintiff's contact with the public along with limitations on job related decisions and work place changes deals largely with workplace adaptation, rather than concentration, pace, or persistence. See McPherson v. Colvin, No. 16-1469, 2016 WL 5404471 at * 8 (E.D.Pa. Sept. 28, 2016)[where the court rejected that moderate restrictions in concentration, persistence, and pace were accommodated by a hypothetical to a VE that only included: 1) the performance of routine, repetitive tasks; 2) a low stress environment (defined as no frequent independent decision making required and no frequent changes in the work setting); and 3) no public interaction and occasional interaction with coworkers and supervisors](citing to Varga v. Colvin, 794 F.3d 809, 815 (7th Cir. 2015)); Knight v. Commissioner, No. 15-1512, 2016 WL 4926072 (D.S.C. Sept. 16, 2016)[The ALJ's limiting the hypothetical to 'unskilled work with no direct interaction with the public; only occasional team type interaction with coworkers; [who] should not be required to adapt to greater than simple, gradual changes in the workplace' did not account for the Plaintiff's moderate limitation in concentration, persistence, or pace].

The remaining relevant restriction placed on the Plaintiff was that she engage in "no high production work, [which the ALJ] defined as no high volume assembly line work." (R.p. 803). Following Mascio, the federal district courts in the Fourth Circuit have split on whether a restriction to "non-production" work adequately accounts for a moderate limitation in CPP. See Bryan-Tharpe v. Colvin, No. 15-272, 2016 WL 4079532 at * (M.D.N.C. July 29, 2016)(citing collecting cases); see also Wilson v. Colvin, No. 2:14-3209-TLW-MGB, 2016 WL 625088 at * 5 (D.S.C. Jan. 15, 2016)(unpublished)[holding restriction to "nonproduction work, no assembly line production, or high speed manner, . . . [s]tanding alone, . . .does not account for a limitation in [CPP]"), recommendation adopted, 2016 WL 613891 (D.S.C. Feb. 16, 2016)(unpublished). However, in this



case, the ALJ did not limit Plaintiff to nonproduction work or no assembly line work. Rather, the ALJ's additional limitation (as set forth in her hypothetical to the VE) was that Plaintiff was prohibited from "high production work." As such, the hypothetical in this case is similar to the mental restrictions set forth in the hypothetical in Varga, where the ALJ instructed the VE to assume an individual with Varga's vocational profile (age, education, and work experience) who was able to perform

> simple, routine, or repetitive tasks in a work environment . . . free of fast paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors.

Varga, 794 F.3d at 812.

The Seventh Circuit determined that a restriction from performing fast paced production jobs did not account for moderate restrictions in CPP. Varga, 794 F.3d at 815 [A restriction to work "free of fast paced production requirements" did not account for Plaintiff's moderate deficits in CPP, because the ALJ failed to define "fast paced production."] Here, the ALJ did define no "high production work" as being "no high volume assembly line work" (R.pp. 803, 849). However, while that limitation may address Plaintiff's concentration problems, it does not appear to address Plaintiff's ability to stay on task for an 8-hour workday. In fact, when the VE was specifically asked whether Plaintiff would be able to perform the jobs identified if she could not maintain attention and focus for two hours at a time, the VE answered that she would not. (R.p. 851).[11]

---

[11] In this regard, Dr. Grant concluded that Plaintiff would have "considerable difficulty maintaining attention and concentration for extended periods." (R.p. 675). Notably, the ALJ assigned "great weight" to Dr. Grant's opinion. (R.p. 817).



Hence, neither the ALJ's RFC assessment nor the ALJ's hypothetical question to the VE address Plaintiff's ability to stay on task, and the court is left to guess how the ALJ accounted for this ability (or inability) despite finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. "Remand thus is appropriate." Carr v. Colvin, No. 15-685, 2016 WL 4662341, at *10 (D. Md. Sept. 7, 2016)[Finding that the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to only occasional contact with supervisors, co-workers, and the public accounts for Plaintiff's moderate difficulties in social functioning,[12] but does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace]. The ALJ did not address or make any finding as to whether Plaintiff would have any difficulties staying on task during an 8 hour workday, or what percentage of time the Plaintiff may have difficulty concentrating during the work day.[13] As such, "it is not entirely clear how the evidence aligns with the necessary functions, which is a required showing." See Miller v. Colvin, No. 15-443, 2016 WL 3679292 at **4-5 (W.D.N.C. July 11, 2016)(citing Mascio, 780 F.3d at 636; SSR 96–8p, 1996 WL 374184, at *7).

While it may be that the ALJ will find, based on the evidence and facts of this case,

---

[12]The ALJ found that Plaintiff had moderate difficulties in social functioning in this case, and held that she accounted for Plaintiff's moderate social limitations by restricting her to having public contact 10% of the workday or less, with no counter sales, or work serving the public. (R.p. 818).

[13]This case therefore stands in contrast to cases where the decision has been upheld because the ALJ specifically addressed the claimant's ability to stay on task notwithstanding the claimant's mental limitations. Cf. Falls v. Colvin, No. 14-195, 2015 WL 5797751, at * 7 (D.S.C. Sept. 29, 2015) ["As opposed to the hypothetical in Mascio, which said nothing about the claimant's mental limitations, the ALJ's hypothetical in this case accounted for each of Plaintiff's mental limitations. The ALJ also accounted for Plaintiff's limitations in the area of concentration when determining Plaintiff's residual functional capacity. The ALJ noted Plaintiff's mental limitations but found that the Plaintiff could concentrate, persist and work at pace to do simple, routine, repetitive work at 1-2 step instructions for extended periods say 2-hour periods in an 8-hour day"].



that Plaintiff's moderate impairment in being able to concentrate and stay on task would not affect her ability to perform the work identified in the decision; see Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a moderate concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; she did not make that determination or finding in her decision, and this Court may not do so in the first instance. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) [Court cannot affirm a decision on a ground that the ALJ did not herself invoke in making the decision].

Therefore, the decision should be reversed and remanded for consideration of Plaintiff's RFC in compliance with Mascio. With respect to Plaintiff's remaining claims of error, on remand the ALJ will be able to consider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, with **remand** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala



v. Schaefer, 509 U.S. 292 (1993).

      The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 14, 2017
Charleston, South Carolina



13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

